IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TODD M. MCCLASKEY                                                PLAINTIFF

v.                     Civil No. 11-3138

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Todd McClaskey, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff filed his applications for DIB on July 13, 2010, alleging an onset date of September 17, 2009, due to a crushed pelvis and hips, a bulging disk in his lower back, depression, and high blood pressure. Tr. 120-125, 164, 176-177, 201, 204, 246-248. His claims were denied both initially and upon reconsideration. Tr. 74, 77, 120. An administrative hearing was then held on May 24, 2011. Tr. 27-68, 80. Plaintiff was present and represented by counsel.

At this time, Plaintiff was 42 years of age and possessed a high school education and training as a journeyman's electrical apprentice. Tr. 32-33, 168, 242. He had past relevant work ("PRW") experience as an electrician, boat builder, and refuse worker. Tr. 33-37, 168-175, 243.

On October 17, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's right inferior pubic rami fracture, right anterior acetabular wall fracture, bilateral

greater trochanteric fracture, DDD of the lumbar spine, obesity, and adjustment disorder with depressed mood did not meet or equal any Appendix 1 listing. Tr. 12-14. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work that does not require climbing, kneeling, crouching, or crawling and only occasional balancing, stooping, and operation of foot controls. The ALJ found Plaintiff was further limited as he must use an assistive device to ambulate and could only perform work where the interpersonal contact is routine but superficial, the complexity of the tasks is learned by experience with several variables and limited judgment, and the supervision required is little for routine tasks bu detailed for non-routine tasks. Tr. 14-.20  With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as an interviewer and a charge account clerk. Tr. 21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 14, 2011. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 6, 8.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the

record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.  **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

Of particular concern to the undersigned is the ALJ's failure to clarify the RFC assessment submitted by Dr. R. D. Simmons. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). This duty includes a duty to order consultative examinations, if necessary, as well as a duty to recontact treating physicians to clarify the record. The Commissioner's regulations explain that contacting a treating physician is necessary when the doctor's records are "inadequate for us to determine whether [the claimant is] disabled 'such as 'when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1512(e), 416.912(e).

In the present case, Dr. Simmons completed a lumbar spine RFC assessment questionnaire on May 25, 2011.[1] Tr. 463-466. Although he indicated that he had been treating Plaintiff since October 2002, the record contains no treatment notes from Dr. Simmons, aside from his assessment. And, while he indicated that Plaintiff was unable to return to work, he failed to answer a number of

---

[1] Dr. Simons indicated that Plaintiff's ability to bend was limited forty degrees, he exhibited an abnormal gait, and he had a positive straight leg raise test on the right side. He then opined that Plaintiff could sit for 30 minutes at a time for a total of less than 2 hours per 8-hour workday, and could stand for 15 minutes at a time for less than two hours total per day. Although he did leave numerous portions of this form blank, he indicated that Plaintiff could not lift and/or carry, twist, stoop, crouch/squat, or climb. However, he also indicated that Plaintiff was unable to work. Tr. 464-465.

4

the questions posed to him regarding Plaintiff's exertional and non-exertional limitations. Dr. Simmons also failed to provide a basis for his opinion and did not indicate when he last treated Plaintiff. The ALJ dismissed Dr. Simmons' assessment, citing the aforementioned ambiguities. However, given the nature of Plaintiff's impairments[2] and the fact that Dr. Simmons was the only treating physician to complete an RFC assessment, we believe that the ALJ should have contacted him to resolve these ambiguities prior to rendering a decision in this case. Therefore, remand is now necessary to allow the ALJ to do so. On remand, the ALJ should also inquire as to the existence of treatment records from Dr. Simmons dated during the relevant time period that might shed further light on Plaintiff's condition.

### IV. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 7th day of March 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[2] On September 17, 2009, while working as a trash slinger, Plaintiff was pinned between the garbage truck and a tree. Tr. 268-289, 295-327, 338-346, 350-354, 360-362. He suffered a fractured pelvis and bilateral hip fractures. He underwent many months of physical therapy, but continued to exhibit weakness and extremely poor hip extension with hip abduction. Tr. 331, 370-375, 380-383, 387-397, 400-402. Plaintiff's condition also necessitated the use of a cane for assistance with ambulation. An MRI of his lumbar spine had also revealed multiple levels of disk disease, probably most pronounced at the L4-L5 level eccentric to the right where it effaces some of the fat around the exiting nerve root, and hard fat around the thecal sac at the L4-L5 and L5-S1 levels, compressing the thecal sac. Tr. 290-291.

AO72A
(Rev. 8/82)